IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BRIAN JOSHUA BAKER,                    )
                                       )
          Plaintiff,                   )
                                       )
v.                                     )          1:14CV878
                                       )
CITY OF DURHAM, et al.,                )
                                       )
          Defendants.                  )
                                       )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on Defendant Dorothea Alene Rosencrans's

("Defendant") motion to dismiss for failure to state a claim and motion for summary

judgment. (Def.'s Mot. Dismiss, Docket Entry 77; Def.'s Mot. Summ. J., Docket Entry 93.)

The matter is ripe for disposition. For the reasons stated herein, the Court recommends

granting both motions.

## I.     PROCEDURAL BACKGROUND

On October 20, 2014, Plaintiff Brian Joshua Baker, a *pro se* inmate, filed a complaint

pursuant to 42 U.S.C. § 1983 alleging unlawful search and seizure and excessive use of force

in violation of the Fourth Amendment against Defendant and others[1]. (*See generally* Compl,

---

[1] Plaintiff's second amended complaint also names the City of Durham; Jose Luis Lopez, Sr.,
former Chief of Police with the Durham Police Department; David Todd Rose, Assistant Chief of
Police with the Durham Police Department; and John Does #1-6, unknown officers with the Durham
Selective Enforcement Team (S.E.T.) (2d Am. Compl. ¶¶2-13.) Although Plaintiff requests an award
of compensatory damages against all defendants including Defendant Rosencrans for the physical and
emotional injuries sustained as a result of the excessive force, his claim does not allege that Defendant

1

Docket Entry 2; *see also* 2d Am. Compl., Docket Entry 62.) Plaintiff's claims arise from a "no-knock"[2] search that was conducted on October 21, 2011, at his girlfriend's apartment where he was staying. (2d Am. Compl. ¶¶ 29-30, 49-56.) The search was conducted in response to a break in at La Cocina Mexican Restaurant in Mebane, North Carolina and pursuant to a warrant based in part on an anonymous tip. (*Id.*) Plaintiff alleges that the search was illegal because: (1) the anonymous informant could not be verified as reliable; (2) a search for "[a]ny and all stolen property" was improper because there was nothing stolen from the business; (3) the warrant was "not particularly descriptive," and therefore did not give officers proper guidance regarding which items to seize; (4) the "no-knock" search warrant was unnecessary and conducted as punishment for Plaintiff's previous lack of cooperation; and (5) the items seized during the search "had absolutely nothing to do with the investigation and could only be seen as a sign of vindictiveness." (2d. Am. Compl. ¶¶ 51-56.)

On January 2, 2018, Defendant filed a motion to dismiss, and on March 28, 2018, a motion for summary judgment. (Def.'s Mot. Dismiss; Def.'s Mot. Summ. J.) She argues in each that Plaintiff's claims are conclusory and barred by the United States Supreme Court's Decision in *Heck. v. Humphrey*.[3] (Def.'s Mot. Dismiss; Def.'s Mot. Summ. J.; *see also* Def.'s Mem. Supp. Mot. Dismiss, Docket Entry 78; Def.'s Mem. Supp. Mot. Summ. J, Docket Entry 94.) Plaintiff filed a response in opposition to each motion. (Pl.'s Response Opp. Mot.

---

Rosencrans was personally involved or liable as a supervisor for the alleged use of excessive force. (*See id.* at 14-22.)

[2] A "no-knock" search is an unannounced entry into the premises. N.C.G.S. § 15A-251(2). Such searches are permitted where there is probable cause to believe that officers executing the search warrant will find their lives in danger if they give notice of their identity and purpose. *Id.*

[3] 512 U.S. 477 (1994).

Dismiss, Docket Entry 81; Pl.'s Response Opp. Mot. Summ. J., Docket Entry 100.) To his response in opposition to Defendant's motion for summary judgment (Pl.'s Response Opp. Mot. Summ. J. at 2-22), Plaintiff attached his declaration (*id.* at 1), Detective John Franklin and Officer Ryan Cook's case supplemental reports of La Cocina break in (*id.* at 23-24), the search warrant and search warrant application (*id.* at 25-34),[4] and an inventory of the items seized pursuant to the warrant (*id.* at 35-36.)

## II.   FACTUAL BACKGROUND

### a.   Plaintiff's Complaint

In his second amended complaint, Plaintiff describes the events leading up to search as follows. (2d. Am. Compl. ¶¶ 14-30.) On the morning of October 4, 2011, the Mebane Police Department responded to a break in in progress at La Cocina Mexican Restaurant in Mebane, North Carolina in Alamance County. (*Id.* ¶¶ 14, 16.) When officers arrived, the perpetrators had already fled the scene. (*Id.*) Nothing was reported stolen, but there was some damage to the business. (*Id.*) Police obtained a description of the vehicle used in the break in. (*Id.* ¶¶ 15-16.) On October 9, 2011, Orange County Sheriff's Department Deputy Tyler Berry pulled Plaintiff over driving a black, 2003 Ford Crown Victoria Police Interceptor with a CB antenna and silver "detective" center caps. (*Id.* ¶¶ 16, 21.) Plaintiff's girlfriend, Angela Butler, was also in the vehicle. (*Id.* ¶ 16.) Deputy Berry told Plaintiff that his vehicle matched the description of the vehicle used in a robbery in Alamance County and asked Plaintiff to wait for Detective Franklin. (*Id.*) Plaintiff agreed. (*Id.*)

---

[4] The warrant application was attested to by Defendant and co-affiant Detective D. Header and signed by Alamance County Superior Court Judge Robert F. Johnson. (Pl.'s Response Opp. Mot. Summ. J. at 25-34.)

Detective Franklin arrived with an Officer Moody. (*Id.* ¶ 17.) Detective Franklin told Plaintiff that he suspected that another vehicle that matched that description was actually the one used in the break in but asked to search Plaintiff's vehicle anyway. (*Id.*) Plaintiff denied consent to search his vehicle, which "visibly upset" Detective Franklin. (*Id.*) Detective Franklin and Officer Moody conversed briefly in private, then looked in the windows of the vehicle with their flashlights, took pictures of the vehicle and asked for Plaintiff and Ms. Butler's licenses. (*Id.* ¶¶ 17-18.) Detective Franklin and the officers let Plaintiff go. (*Id.* ¶ 18.)

On October 10, 2011, Durham Police pulled Plaintiff over, this time for "looking too official." (*Id.* ¶ 19.) Officers again asked to search the vehicle, and Plaintiff refused. (*Id.*) Officers asked Plaintiff to exit the vehicle so they could "run the [K-9] dog around the car." (*Id.*) An officer rolled the driver-side window of the vehicle down. (*Id.* ¶ 20.) The K-9 jumped through the window and sat down in the rear of the car. (*Id.*) Using the "sit down" alert as an excuse, officers searched Plaintiff's vehicle. (*Id.*) They found nothing and allowed Plaintiff to leave. (*Id.*) As soon as Plaintiff got home, he removed the mounted CB antenna and the silver "Detective" center caps from the vehicle. (*Id.* ¶ 21)

The same day, after attempting to locate Plaintiff at his mother's house, officers located Plaintiff's vehicle outside Ms. Butler's apartment at 1200 Leon Street in Durham, North Carolina and took more pictures of it. (*Id.* ¶ 22.) Detective Franklin asked one Sergeant Price to place surveillance on Plaintiff's vehicle, but Sergeant Price told Detective Franklin that he was too short staffed. (*Id.* ¶ 23.) The following day, Detective Franklin and Officer Apple took more pictures of the vehicle outside Ms. Butler's house, purportedly because the center caps had been removed, although they had noticed and photographed the alterations to the

vehicle the day before. (*Id.* ¶¶ 21-22, 24.) On October 14, 2011, Detective Franklin and Officer Apple went to Ms. Butler's apartment to make contact with her. (*Id.* ¶ 25.) No one answered the door, so they took pictures of Ms. Butler's vehicle. (*Id.*) On October 18, 2011, they tried again to make contact with Ms. Butler at her apartment and again no one answered the door. (*Id.* ¶ 26.) Officers learned that she worked at T.G.I. Friday's in Durham, and on October 19, 2011, they went there to speak with her. (*Id.* ¶ 27.) Detective Franklin asked Ms. Butler for consent to search her apartment; Ms. Butler refused. (*Id.* ¶ 28.)

On October 20, 2011, Defendant and Detective Chris Ray Header applied for a "no-knock" search warrant. (*Id.* ¶ 29.) In the warrant application, Defendant swore that she had personally received a call from someone wishing to remain anonymous. (*Id.* ¶ 30.) Defendant swore that the informant told her that Plaintiff, Angela Butler and one other person had burglarized La Cocina and that he or she had seen numerous weapons inside Ms. Butler's apartment. (*Id.*) Defendant omitted from her warrant application the fact that nothing was stolen from the business. (*Id.* ¶¶ 30, 52.)

On October 21, 2011, six individuals carrying shotguns and dressed in black suits and helmets with face shields (John Does Nos. 1-6) burst into the apartment on Leon Street. (*Id.* ¶¶ 31-32.) They instructed Plaintiff to get on the ground. (*Id.* ¶ 32.) Plaintiff raised his hands above his head and got down on his knees. (*Id.*) The individuals threw Plaintiff to the floor, beat him in the face, choked him, and put a knee in his back while they screamed "quit resisting." (*Id.* ¶¶ 33-34.) After they cuffed Plaintiff, one of the officers kicked Plaintiff between the legs and jerked him to a standing position by the hand cuffs. (*Id.* ¶ 34.) Plaintiff was then seated outside the apartment while Defendant, Detective Header, Detective Franklin,

and other Durham police officers searched the apartment. (*Id.* ¶¶ 35-36.) Officers B.T. Francis and H.M. Crenshaw approached Plaintiff with a pink criminal summons. (*Id.* ¶ 37.) They told Plaintiff that they had found a minute amount of marijuana and some drug paraphernalia in a back bedroom and that Plaintiff would be charged for it. (*Id.*) Defendant and the other searching officers seized boxes of Plaintiff's property including a laptop, a palm pilot, cell phones, an external hard drive and thumb drive, pocket knives, a BB gun, binoculars, sheers, wire crimpers and stripers, various clothing, and Plaintiff's vehicle. (*Id.* ¶ 38.) Officers took Plaintiff to the hospital, where he was treated for injuries, then to the Alamance County Jail. (*Id.* ¶¶ 39-41.)

When Plaintiff's mother and girlfriend returned to the apartment later that day, they found the door open. (*Id.* ¶ 42.) A substantial amount of Plaintiff's property had been stolen. (*Id.*) Plaintiff's mother called the Durham Police Department to complain about the assault on Plaintiff during the search. (*Id.* ¶ 43.) Plaintiff's mother was informed that Plaintiff had resisted arrest. (*Id.*)

Police returned Plaintiff's property, including his vehicle, to his mother on July 9, 2012. (*Id.* ¶ 44.) When returned, Plaintiff's vehicle, which had been in good condition when seized, had rusted wheels, flat and warped tires, and damage the exterior finish or "coat". (*Id.*) Also in July, 2012, blood tests revealed that Plaintiff's thyroid wasn't functioning properly. (*Id.* ¶ 45.) While in prison, Plaintiff began to have nightmares about being re-arrested. After his release, Plaintiff continued to have nightmares, and also experienced rapid weight loss, nausea, vomiting, diarrhea, palpitations, chest and stomach pain, difficulty breathing, headaches,

anxiety, and panic attacks. (*Id.* ¶ 46.) Plaintiff sought medical treatment and was diagnosed with anxiety and depression. (*Id.* ¶¶ 46-47.)

### b. Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment

The case supplemental reports and the search warrant and application Plaintiff provided give additional detail of the La Cocina break in and the ensuing investigation. (Pl.'s Response Opp. Mot. Summ. J. at 23-34.) Detective John Franklin and Officer Ryan Cook, who responded to the break in, each composed a supplemental report based on the surveillance video footage and their interviews with La Cocina employee and witness Francisco Urieda-Ponciano. (*Id.* at 23-34.) Officer Cook summarized the activity captured in the surveillance video footage as follows:

> At 6:55am two unknown white males came into the restaurant through the back door. . . . Both suspects entered the business and [separated]. Suspect [one] walked through the business and walked to a room located in the back of the restaurant while suspect [two] stayed in the kitchen. . . . Suspect [one] then walked back to the kitchen area and used a crow bar to enter the office. Both suspects entered the office and started trying to break open the safe. The suspects then left out the back door of the business. At this time, [an employee,] Mr. [Francisco Urieda]-P[o]nciano entered the business through the front door and walked back to the kitchen. You can see Mr. P[o]nciano talking on the phone and at that point suspect [one] re-enters the business through the back door. A few seconds pass, and the suspect turns around and leaves the business.

(*Id.* at 23.) As to the suspects' attire, Officer Cook reported,

> One of the suspects (suspect [one]) was wearing a long black jacket, blue jeans, black shoes, black gloves, and had a dark colored bandanna over his face. The other suspect (suspect

[two]) was wearing a long black jacket, dark pants, a dark colored tobagan [sic] with a white stripe, and was wearing a black bookbag. . . . When suspect [one] walked out of the back room he was pulling his hood from his jacket back over his head and at that point, I could see that suspect [one] had a shaved head but could not tell if he had any facial hair.

(*Id.*) Detective Franklin provided additional detail,

Suspect [one] appeared to be a white male wearing a coat with a hood, blue jeans, dark shoes, dark gloves with a light design near the wrist. Suspect [one] appeared to keep his nose, mouth, and chin covered using a dark bandana. Suspect [one] was carrying a yellow crowbar. Suspect [two] appeared to be a white unknown gendered person with a heavy build wearing a dark coat, knit cap containing a design, white t-shirt under the coat, blue jeans, dark gloves with a design (believed to be black Mechanics gloves with white lettering). Suspect [two] appeared to keep his/her nose, mouth, and chin covered using a dark bandana. Suspect [two] was carrying a dark canvass backpack with a large handle.

(*Id.* at 24.)

Detective Franklin and Officer Cook also interviewed the witness to the break in, La Cocina employee Francisco Urieda-Ponciano. (*Id.* at 23-34.) Mr. Urieda-Ponciano reported that when suspect one reentered the building, suspect one asked him, "Amigo, is there a problem?" (*Id.* at 24.) Mr. Urieda-Ponciano further reported that he saw a black vehicle (possibly a 90's model Crown Victoria) parked outside. (*Id.* at 23.) Mr. Urieda-Ponciano stated an unknown white female with "blonde-ish" hair and possibly wearing a pink shirt was driving, and there were two other white males in the vehicle, both wearing all black with their faces covered. (*Id.*)

The search warrant and application, attested to by Defendant and co-affiant Detective C. Header and signed by Alamance County Superior Court Judge Robert F. Johnson, further

describe the ensuing investigation. (Pl.'s Response Opp. Mot. Summ. J. at 25-34.) Surveillance footage from a neighboring business confirmed that the vehicle seen picking up the suspects from behind La Cocina at the time of the break in was black with silver center hubs. (*Id.* at 28.) Around the same time, Detective Header was on patrol nearby when he "noticed a black vehicle with center hubcaps, an antennae mounted on the center of the rear trunk, and a small, think paper tag." (*Id.*) Detective Header's in-car camera an image of the vehicle. (*Id.*) Mebane Police Department circulated a description of the suspect vehicle to surrounding agencies. (*Id.* at 29.)

On Sunday, October 9, 2011, Deputy Berry observed and stopped a vehicle matching the description of the suspect vehicle. (*Id.*) The vehicle was a black Ford Crown Victoria with a small, thin paper tag and an antenna mounted on the center of the rear trunk area. (*Id.*) A police scanner was mounted between the two front seats. (*Id.*) Plaintiff and Ms. Butler were in the car. (*Id.*) Plaintiff told police he had purchased the vehicle, which was registered to the City of Indianapolis, Indiana, on eBay. (*Id.* at 30.) Ms. Butler told police she lived at 1200 Leon Street, later confirming that she occupied apartment D6. (*Id.*)[5] Plaintiff's vehicle was observed there on October 10, 2011. (*Id.*)

The warrant application also describes an anonymous tip Defendant received on October 20, 2011. (*Id.* at 30-31.) According to the warrant application,

> This person wished to remain anonymous as they fear for their personal safety. The source stated that Brian Baker and Angela Butler along with other person whom the source believed to be Chris Chamberlin, were the persons who burglarized the La Cocina and that the three had been talking about the offense,

---

[5] Plaintiff denies that the officers asked Ms. Butler for her address.

bragging about having been stopped in Orange County and that officers apparently did not "have anything" on them because they weren't arrested. In addition, the person said that [Brian] Baker made the statement that they had gone into the business and the alarm went off, so they exited the building to wait to see what kind of response there would be, and when there was no response from Police, they reentered the building and saw a "Mexican" in the business on the phone and assumed that he was calling the police.

In addition, the source said that they know that Brian Baker has an extensive history of breaking into businesses and burglarizing the safes. Sgt. Rosencrans has verified the information provided by the anonymous source which includes that Angela Butler is residing at 1200 Leon Street, Apartment D6, Durham, NC as well as intimate details of the Burglary that have not been made public and could have only come from someone who was inside the business at the time. The source spoke about Brian Baker's extensive criminal history and that he is the boyfriend of Angela Butler and that the source of information has seen numerous weapons such as handguns inside the residence.

(*Id.*)

The warrant application also notes that "[i]n the video at La Cocina, the face of suspect [one] is partially seen and based upon the photos taken at the vehicle stop in Orange [C]ounty of suspect Brian Joshua Baker, there appears to be a strong likeness of facial features." (*Id.* at 30.)

Finally, the warrant application indicates that Plaintiff's criminal history includes thirty-two counts of felony breaking and entering, fourteen counts of felony larceny after breaking and entering, felony larceny, common law robbery and six counts of safe cracking. (*Id.*) In addition,

> Sgt. Rosencrans reviewed statements from other agencies investigations in which Brian Joshua Baker was arrested for Safecracking and Burglary on December 15, 2000 in which Baker gave a full and detailed statement concerning safe burglaries and that his method of operation was to park at the rear of the business and to either use a pry tool or to kick in the back door and to search out and find the safe in the business then break into same using pry tools. In the statement, Baker describes at least [five] businesses in which he uses the same modus operandi to break into only Mexican Restaurants.

(*Id.* at 31.)

Based on the foregoing, Superior Court Judge R. Johnson found probable cause to believe that "Plaintiff was present and participated in the crime of Felony Breaking and Entering and Burglary" of La Cocina Restaurant in Mebane, NC. (*Id.* at 25-34.) On October 20, 2011, Judge Johnson authorized a search of 1200 Leon Street, Apartment D6 and seizure of the following items:

1. Any latent and/or trace evidence, linking the perpetrators to the crime scene, including but not limited to, fibers, blood, hair, shoes or other articles of clothing;
2. A yellow crow bar;
3. A radio scanner;
4. Hoodies and bandanas[;]
5. Pry bars or other instrumentalities of Burglaries[;]
6. Any and all stolen property[;]
7. U.S. Currency, gloves, masks;
8. Items tending to indicate ownership, control or dominion of 1200 Leon Street, Apartment D6, Durham, NC[; and]
9. Any and all other items not listed above which are fruits or instrumentalities of violations of the General Statutes of North Carolina.

(*Id.* at 34.) The search warrant was executed on October 21, 2011. Searching officers seized the following items:

- Nokia Track Phone Model 6790S-1C IMEI# 353392-04-113911-8
- Motorola Verizon Phone Hex MEID # A00000157FC618

- LG Track Phone Model TFLG410GFB Serial # 908CQUK661174
- WD My Passport Hotspot Serial # WXC1AG1F7588 and USB Cord
- 512 MB Flash Drive
- Parker and Son Knife
- Case Hook Knife
- WISS Sheers Metal Cutting Tool VR66 written inside handle
- Crimper and Wire Cutting Tool Conduct Tite with a yellow handle
- Wire Stripper with a red and black handle
- Nokia Straight Talk Box ADRTC- ST 6790BK
- Dell Pocket PD Model HC02U Serial # 26374106917
- Dell Inspiron Serial # CN0G848F7016693E02ZIA00 with cord
- Sanyo Model # VPC- 51213 Serial # 11041020044
- Bushnell 10x42 Sportsman Binoculars with case
- BB Gun
- 3 Blue Jean Pants
- 1 Blue Jean Shorts
- Black Tactical Pants
- Navy Blue Skull Cap
- Black Dew Rag
- 2 Hooded Gray Sweat Shirts
- Navy Blue Coat
- Black Belt
- Black Jacket
- 2003 Crown Victoria with the VIN of 2FAFP71W03X209820

(*Id.* at 35.)

III. **STANDARD OF REVIEW**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" must be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct." *Id.; see also Simmons v. United Mortg. & Loan Inv., EEC*, 634 F.3d 754, 768 (4th Cir. 2011) ("On a Rule 12(b)(6) motion, a complaint must be dismissed

if it does not allege enough facts to state a claim to relief that is plausible on its face.") (citations and quotations omitted)).

The "court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, and bare assertions devoid of factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted); *see also Assa'ad-Faltas v. Gingliat, Savitz and Bettis Law Firm,* 2014 WL 11497848 at *2 (D.S.C. 2014) (unreported). In other words, the standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate the plaintiff has stated a claim that makes it plausible he is entitled to relief. *Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal, 556* U.S. at 678, and *Twombly,* 550 U.S. at 557).

*Pro se* complaints are to be liberally construed in assessing sufficiency under the Federal Rules of Civil Procedure. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, even under this liberal construction, "generosity is not fantasy," and the court is not expected to plead a plaintiff's claim for him. *Pender v. Suburban Hosp., Inc.,* 159 F.3d 186, 192 (4th Cir. 1998). "Liberal construction is particularly appropriate when a *pro se* complaint raises civil rights issues." *Moody—Williams v. LipoScience,* 953 F. Supp. 2d 677, 680 (E.D.N.C. 2013) (emphasis in original); *see also Brown v. N.C. Dept. of Corr.,* 612 F. 3d 720, 722 (4th Cir. 2010).

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.,* 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary

judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. *Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting).

When making the summary judgment determination, the Court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997). However, the party opposing summary judgment may not rest on mere allegations or denials, and the court need not consider "unsupported assertions" or "self-serving opinions without objective corroboration." *Anderson*, 477 U.S. at 248-49; *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996).

## IV.   **ANALYSIS**

Plaintiff asserts that Defendant's actions constituted illegal search and seizure in violation of the Fourth Amendment of the United States Constitution. (2d Am. Compl.) His specific claims can be grouped and summarized as follows: (a) neither the warrant nor the "no-

knock" entry was based on probable cause because Defendant could not verify the anonymous tip as reliable; (b) the warrant was invalid because it (1) lacked particularity, and (2) improperly authorized seizure of "any and all stolen property"; and (c) the search was improperly executed because the searching officers seized items unresponsive to the warrant to be vindictive. (*Id.* ¶¶ 50-56.)

Defendant now moves to dismiss for failure to state a claim and for summary judgment arguing that Plaintiff's claims (a), (b), and (c) are conclusory and (d) Plaintiff's claim is barred by the United States Supreme Court's holding in *Heck v. Humphrey.* (Def.'s Mem. Supp. Mot. Dismiss, Docket Entry 78; Def.'s Mem. Supp. Mot. Summ. J., Docket Entry 94.) For the reasons that follow, the Court finds that Plaintiff's claims against Defendant lack sufficient factual support and there is insufficient evidence favoring Plaintiff for a fact finder to return a verdict in his favor as against Defendant. The undersigned thus and recommends that the Court grant Defendant's motions to dismiss and for summary judgment.

### a. The issuing judge had a substantial basis for concluding that probable cause existed.

Plaintiff first asserts that because Defendant could not verify the anonymous informant's tip as reliable, probable cause did not support either the "no-knock" entry or the search warrant generally. (2d. Am. Compl. ¶ 51.) Pursuant to N.C.G.S. § 15A-251(2), "[a]n officer may break and enter any premises or vehicle when necessary to the execution of the warrant if . . . [t]he officer has probable cause to believe that the giving of notice would endanger the life or safety of any person." In determining the validity of anonymous tips in the context of probable cause determinations, a totality-of-the-circumstances approach is used. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The task of the issuing magistrate is simply to

make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Id.* "Veracity" is satisfied when "'corroboration through other sources of information reduced the chances of a reckless or prevaricating tale,' thus providing 'a substantial basis for crediting the hearsay.'" *Id.* at 244-45 (citing *Jones v. United States*, 362 U.S. 257, 271 (1960)). "Basis of knowledge" may be established by corroborating information provided by the informant beyond "easily obtained facts and conditions." *Id.* The duty of the reviewing court is simply to insure that the magistrate had a "substantial basis for . . . concluding" that probable cause existed. *Id.* A magistrate's "determination of probable cause should be paid great deference by reviewing courts." *Id.* (citing *Spinelli v. United States*, 393 U.S. 410, 419 (1969)).

Here, Plaintiff asserts that the anonymous tip was from a source Defendant "didn't know and could not identify." (2d. Am. Compl. ¶ 51.) Therefore, Plaintiff alleges, "*if there was a source* this person could not be proven reliable." (*Id.* (emphasis added).)[6] He thus argues Defendant was not entitled to rely on the anonymous tip. (*Id.*) Plaintiff also alleges that when the anonymous tip was made, the Mebane Police Department "lacked any evidence to prove"

---

[6] In his response in opposition to Defendant's motion for summary judgment, Plaintiff clearly states his belief that "there was no 'anonymous' tip, and that it was all fabricated by Defendant in order to gain access to the vehicles and apartment." (Pl.'s Response Opp. Mot. Summ. J. at 11.) In support of this contention, Plaintiff alleges that Detective Franklin "became upset about not being able to search plaintiff's vehicle," and that he and Officer Apple "started harassing [P]laintiff . . . by constantly driving to [his place of residence] and even lying about the purpose in their reports." (2d Am. Compl. ¶¶ 17-18, 22-28.) Even if true, these facts do not make Plaintiff's claim that Defendant fabricated the anonymous tip or a retaliatory purpose for applying for a "no-knock" entry plausible on its face. Such an inference would be purely speculative. *See Assa'ad-Faltas*, 2014 WL 11497848 at *2 (D.S.C. 2014) (unreported).

Plaintiff's involvement in the break in and its officers were upset because Plaintiff had refused all requests to search his vehicle. (*Id.* ¶¶ 17, 50.) Consequently, Plaintiff argues, the police lacked probable cause to believe that giving notice of entry would endanger searching officers or residents and the "no-knock" entry was purely retaliatory. (*Id.* ¶¶ 51, 53.) Plaintiff also contends the police lacked probable cause of his involvement in the break in. (*Id.* ¶¶ 50-51.)

Plaintiff has not stated a claim that plausibly entitles him to relief. The Court cannot reasonably infer from the tip's anonymous nature that Defendant could not verify the tip through corroboration. Nor can the Court reasonably infer that Plaintiff's refusal to allow Detective Franklin to search his vehicle prompted Defendant to apply for a "no-knock" entry in retaliation in order to obtain a warrant and gather the evidence she lacked. Thus, no facts support Plaintiff's claim that the police lacked probable cause to believe that a standard knock-and-announce entry posed a danger or to believe Plaintiff was involved in the break in. Thus, Plaintiff has not stated facts which make his claim plausible on its face. However, even if Plaintiff's allegation that the police lacked any evidence connecting him to the break in, taken as true, makes Plaintiff's claim plausible—and the Court finds it does not—Plaintiff's claim cannot survive summary judgment.

There is no genuine issue of material fact as to whether the issuing judge had a substantial basis for concluding probable cause to believe that a knock-and-announce entry posed a danger or that Plaintiff was involved in the break in. In the search warrant and application, Defendant swore that she had verified the information provided by the anonymous source, for example Ms. Butler's address, her relationship to Plaintiff, and Plaintiff's criminal history. (Pl.'s Response Opp. Mot. Summ. J. at 31.) Beyond this,

Defendant stated that the anonymous source shared details about the burglary that could only have come from someone who was inside the business at the time. (*Id.*) The evidence supports her statement: the informant reported Plaintiff had left the business because the alarm had gone off and reentered when there was no response from the police, a fact corroborated by the police reports of the video surveillance. (*Id.* at 24, 30.) In addition, the informant reported that when Plaintiff went back in, he saw a "Mexican" in the business on the phone. (*Id.* at 30.) Mr. Urieda-Ponciano stated that he was on the phone when suspect one reentered, and that the suspect said to him, "Amigo, is there a problem." (*Id.* at 24.) Thus, Mr. Urieda-Ponciano's statement and the surveillance video corroborate aspects of the anonymous informant's tip beyond facts and conditions easily obtained and provide a substantial basis for crediting the informant's tip. The judge was therefore entitled to rely on the informant's statement regarding the identity of the perpetrator and that he or she had seen weapons including handguns in the residence to be searched to determine that Plaintiff was involved in the break in/burglary and a "no-knock" entry was warranted.[7]

The Court therefore finds that the evidence sufficiently corroborated the anonymous tip to establish its veracity and the basis of the informant's knowledge such that probable cause supported the "no-knock" entry.

---

[7] There was ample other evidence to support a finding of probable cause of Plaintiff's involvement in the break in. For example, Plaintiff's vehicle matched the description of the suspect vehicle. (*Id.* at 23-24, 28-29.) Plaintiff not only had an extensive history of breaking and entering, larceny, robbery, and safe cracking, but also reported to other agencies that he had previously targeted Mexican restaurants and used the same method to rob them. (*Id.* at 30-31.) One suspect's face was partially visible in video surveillance footage, and it bore a "strong likeness" to Plaintiff's facial features. (*Id.* ¶30.) Thus, other evidence independently provided at least a substantial basis for concluding that probable cause existed of Plaintiff's involvement in the La Cocina break in.

### b.    The warrant was drafted with sufficient particularity.

Plaintiff next alleges that the warrant lacked particularity and improperly authorized seizure of "any and all stolen property." (2d Am. Compl. ¶¶ 52, 54-55.) Specifically, first, Plaintiff argues that because all of the items seized were returned, the seized items were not connected to the investigation and therefore improperly seized. (*Id.* ¶ 54.) Plaintiff attributes this wrongful seizure, in part, to the lack of particularity in the descriptions of the items to be seized. (*Id.* ¶ 55.)[8] He describes the warrant as "not particularly descriptive" and overbroad, and alleges it "showed no way to distinguish from normal items." (*Id.* ¶ 55.) Second, Plaintiff argues that because nothing was actually stolen from La Cocina—a fact Defendant omitted from her warrant application—a search for "any and all stolen property" was improper. (*Id.* ¶ 52.)

The Fourth Amendment requires that search warrants "particularly describ[e] the place to be searched." U.S. Const. amend. IV. "The Supreme Court has identified two important purposes underlying the particularity requirement: (1) preventing general searches, and (2) ensuring that the executing officer is able to distinguish between those items which are to be seized and those that are not. *United States v. Dickerson*, 166 F.3d 667, 693 (4th Cir. 1999) (quoting *Marron v. United States,* 275 U.S. 192, 196 (1927)), *rev'd on other grounds,* 530 U.S. 428 (2000). "The Fourth Amendment requires that a search warrant describe the items to be seized with sufficient particularity to prevent a 'general, exploratory rummaging.'" *United States v. Lynn*, 37 F.3d 1496 (table case), 1994 WL 556873 at *3 (4th Cir. 1994) (quoting *United States v.*

---

[8]Plaintiff also attributes the wrongful seizure to the vindictiveness of the searching officers. (2d Am. Compl. ¶ 54.) This claim will be discussed in section c below.

*Oloyede*, 982 F.2d 133, 138 (4th Cir. 1992)). "Particularity ensures that the search is 'confined in scope to . . . evidence relating to a specific crime for which there is probable cause." *United States v. Davis*, 939 F. Supp. 2d 535, 564 (E.D.N.C. 2013) (quoting *Oloyede*, 982 F.2d at 138)).

> The degree of specificity required when describing the goods to be seized may necessarily vary according to the circumstances and type of items involved ... (T)here is a practical margin of flexibility permitted by the constitutional requirement for particularity in the description of items to be seized." *United States v. Torch,* 609 F.2d 1088, 1090 (4th Cir.1979) (quoting *United States v. Davis,* 542 F.2d 743, 745 (8th Cir.1976)). Additionally, in assessing the specificity of a warrant, all parts should be read together. *United States v. Weston,* 962 F.2d 8, 1992 WL 90554, at *5 (4th Cir. Apr. 30, 1992) (unpublished table decision). Where a warrant limits police discretion by allowing them only to seize evidence of a particular crime it is generally not overbroad. *United States v. Jones,* 31 F.3d 1304, 1313 (4th Cir.1994).

*United States v. Davis*, 939 F. Supp. 2d 535, 543 (E.D.N.C. 2013).

Plaintiff has not stated a claim that can survive a motion to dismiss. First, Plaintiff has provided no factual support for his claim that the warrant lacked particularity. Plaintiff's complaint fails to indicate what items officers were authorized to seize or how they were described. Although Plaintiff's complaint lists some of the items seized during the search (2d Am. Compl. ¶ 38), on Defendant's motion to dismiss, the Court need not accept as true Plaintiff's legal conclusion that they were not described with sufficient particularity to prevent a general exploratory search. Moreover, the items Plaintiff listed in his complaint are not facially unrelated to a crime of breaking and entering. (*Id.*) Without more, the Court cannot reasonably infer that the warrant lacked particularity.

Second, even assuming nothing was stolen from La Cocina, the warrant's authorization to seize "any and all stolen property" is not fatal. In the context of a particular crime, such an instruction would not be facially overbroad. *Davis*, 939 F. Supp. 2d at 564. Moreover, a searching officer may lawfully seize anything she sees in plain view if it is immediately apparent that the item is contraband or the fruit, an instrumentality, or evidence of a crime. *Horton v. California*, 496 U.S. 128 (1990). This would include any item immediately apparent to be stolen from La Cocina. Plaintiff does not allege that this item enlarged the scope of the search beyond the search of items properly described.[9] Thus, even if no property was stolen from La Cocina, the warrant's authorization to seize "any and all stolen property" does not invalidate the warrant. Plaintiff is not plausibly entitled to relief.

Even if Plaintiff has somehow stated facts to show that the warrant was not sufficiently particular in its descriptions of the items to be seized or improperly authorized the seizure of stolen property, the evidence directs another conclusion on summary judgment. The Court has reviewed the items listed in the warrant and the items seized. (*See generally* Pl.'s Response Opp. Mot. Summ. J. at 34-35.) The Court disagrees with Plaintiff that the warrant lacked sufficient particularity. Based on what was seized, it does not appear that officers were unable to differentiate items to be seized from other property. (2d Am. Compl. ¶ 55.) Moreover, although the warrant lists "any and all stolen property," it also refers to a particular crime— "Felony Breaking and Entering and Burglary at [La Cocina]." (Pl.'s Response Opp. Mot. Summ. J. at 31.) Thus the warrant instructed officers to look only for items related to that

---

[9] Plaintiff does not object to the following descriptions: "(2) a yellow crowbar; (3) a radio scanner; and (8) items tending to indicate ownership, control or dominion of 1200 Leon Street, Apartment D6, Durham, N.C." (Pl.'s Response Opp. Mot. Dismiss. at 5.)

particular crime. *Davis*, 939 F. Supp. 2d at 564. The Court thus finds that the warrant falls within the "practical margin of flexibility permitted by the constitutional requirement for particularity." *Torch*, 609 F.2d at 1090. Therefore, there is no genuine issue of material fact as to whether the warrant was proper.

### c.    Seizure of Plaintiff's Property

Finally, Plaintiff argues that officers exceeded the scope of the warrant by seizing items unresponsive to the warrant. (2d Am. Compl. ¶¶ 53-54.) As previously noted, Plaintiff argues that because all of the items seized were returned, the seized items were not connected to the investigation and therefore improperly seized. (*Id.* ¶ 54.) Plaintiff attributes this wrongful seizure not only to a lack of particularity, discussed above, but also to the vindictiveness of the searching officers. (*Id.*)

While in the process of executing the search, "officers cannot grossly exceed the scope of a search warrant in *seizing* property." *United States v. Robinson*, 275 F.3d 371, 381 (4th Cir. 2001) (internal quotation marks omitted) (emphasis in original). "[I]tems seized pursuant to a validly issued warrant are 'not required, on their face, to necessarily constitute evidence of [an offense identified in the relevant warrant]–rather, they only *potentially* ha[ve] to be evidence of such [offenses]." *United States v. Kimble*, 855 F.3d 604, 612 (4th Cir. 2017) (emphasis in original).

Plaintiff fails to cite sufficient factual information in his complaint to support his claim that Defendant or other officers exceeded the scope of the warrant by seizing the items not responsive to it. He notes that all items seized were later returned. (2d Am. Compl. ¶ 54.) Even so, such items only had to *potentially* be evidence of breaking and entering or burglary,

*Kimble*, 855 F.3d at 612, and there are insufficient facts upon which to infer that they did not potentially have evidentiary value. Plaintiff also notes what the officers did not seize—for example weapons, U.S. currency, stolen items, or a yellow crowbar. (*Id.* ¶ 54.) However, this does little to help the Court determine that the items that were seized were unresponsive to the warrant and taken solely to be vindictive. And, even if true, the fact that Police uncovered no evidence of the La Cocina break in at the apartment is not material to Plaintiff's claim that unresponsive items were seized improperly. Again, the items seized only had to *potentially* be evidence of breaking and entering or burglary.

Plaintiff's claim also fails on summary judgment. The Court has considered the items described in the warrant and the inventory of seized items (*see generally* Pl.'s Response Opp. Mot. Summ. J. at 34-35), and finds that no genuine issue of material fact exists to preclude summary judgment. As noted previously, all items seized bear a relation to those listed in the search warrant, and therefore a relation to the crimes of breaking and entering and burglary for which probable cause existed. Plaintiff has failed to explain how the items seized were so unrelated to the crime in question or so unresponsive to the warrant that the execution of the warrant amounts to a Fourth Amendment violation. Therefore, there is no genuine issue of material fact as to whether the search warrant was executed properly.

### d. Plaintiff's claims are not barred by *Heck*.

Defendant argues that Plaintiff's claims are bared by *Heck v. Humphrey*. (Def.'s Mem. Supp. Mot. Dismiss at 6-9; Def.'s Mem. Supp. Summ. J. at 8-12.) *Heck* generally bars § 1983 prisoner claims which would necessarily imply the invalidity of a conviction unless the

conviction or sentence has already been invalidated. 512 U.S. at 487-88.[10] "[A] civil-rights claim does not necessarily imply the invalidity of a conviction or sentence if (1) the conviction derives from a guilty plea rather than a verdict obtained with unlawfully obtained evidence and (2) the plaintiff does not plead facts inconsistent with guilt." *Covey*, 777 F.3d at 197 (citing *Lockett v. Ericson*, 656 F.3d 892, 897 (9th Cir. 2011); *Easterling v. Moeller*, 334 F. App'x. 22, 24 (7th Cir. 2009)). When it is unclear that evidence seized during a search was used to secure a conviction, it cannot be said that a challenge to that search would necessarily imply the invalidity of a federal conviction. *Alipui v. Byerson*, 638 F. App'x. 214, 215 (4th Cir. 2016). However, when the conviction cannot stand without evidence obtained from the search and seizure, *Heck* bars the § 1983 claim even when a conviction was obtained through a guilty plea. *Bishop v. Cty. of Macon*, 484 F. App'x. 753, 756 (4th Cir. 2012).

Here, Plaintiff's claims do not necessarily imply the invalidity of his conviction. First, Plaintiff's conviction stems from a guilty plea and Plaintiff does not plead facts that are inconsistent with guilt. Second, it is unclear that the seized items was used as evidence to secure Plaintiff's conviction at all. Finally, it is not apparent that Plaintiff's conviction cannot stand without evidence obtained from the search and seizure. Defendant fails to identify what evidence from the search supported Plaintiff's conviction. Moreover, there is other evidence of Plaintiff's involvement in the La Cocina break in beyond the items seized from Plaintiff's

---

[10] For *Heck* to bar a claim, the claim must also be brought by a claimant who is either (i) currently in custody or (ii) no longer in custody because the sentence has been served, but nevertheless could have practicably sought habeas relief while in custody." *Covey v. Assessor of Ohio Cty.*, 777 F.3d 186, 197 (4th Cir. 2015) (citing *Heck*, 512 U.S. at 487.) Although Plaintiff is in custody, *Heck* does not bar his claim unless that claim also implies the invalidity of Plaintiff's conviction or sentence. The Court finds that Plaintiff's claim does not necessarily imply the invalidity of his conviction or sentence. Thus, it need not address whether Plaintiff should have sought habeas relief.

apartment and vehicle. In particular, police had video footage from a neighboring business which showed a vehicle matching the Plaintiff's at La Cocina the day of the breaking and entering; video footage of a suspect bearing "strong likeness of facial features" to Plaintiff from La Cocina's security cameras; a record of Plaintiff's extensive history of similar offenses; and Plaintiff's own statements from prior investigations, where he described "at least 5 businesses in which he [parks at the rear of the business and uses a pry tool] to break into only Mexican Restaurants." (Pl.'s Response Opp. Mot. Summ. J. at 28-31). Thus *Heck* does not bar Plaintiff's claim. However, as detailed above, Plaintiff has nevertheless failed to factually support his claims to survive a motion to dismiss; on summary judgment, the evidence eliminates any genuine issue of material fact on which a reasonable jury could find for Plaintiff as against Defendant. Defendant's motion to dismiss and for summary judgment should therefore be granted.

## V.   CONCLUSION

For the reasons stated herein, **IT IS HEREBY RECOMMENDED** that Defendant's motion to dismiss for failure to state a claim (Docket Entry 77) be **GRANTED** and Defendant's motion for summary judgment (Docket Entry 93) be **GRANTED**.

_____
Joe L. Webster
United States Magistrate Judge

July 13, 2018
Durham, North Carolina